Zhu also argues that pursuant to *Xiao Kui Lin v. Mukasey*, 553 F.3d 217, 221 (2d Cir.2009), the BIA engaged in impermissible speculation when it found that she did not establish that she would return to China with her children. However, the BIA reasonably found that Zhu failed to establish her *prima facie* eligibility for relief because nothing in the record indicated that her U.S. citizen children would accompany her to China rather than remain in the United States with their U.S. citizen father. *See Jian Hui Shao*, 546 F.3d at 148, 156–57; *cf. Xiao Kui Lin*, 553 F.3d at 221.

Zhu additionally asserts that her case should be remanded pursuant to *Shou Yung Guo v. Gonzales*, 463 F.3d 109 (2d Cir.2006), and *Tian Ming Lin v. U.S. Dep't of Justice*, 473 F.3d 48 (2d Cir.2007). However, we will not remand to the BIA for consideration of evidence that was not contained in the administrative record. *See Xiao Xing Ni v. Gonzales*, 494 F.3d 260, 262 (2d Cir.2007). Lastly, Zhu's argument that the BIA violated her due process rights by failing to consider her successive asylum application fails under

*Yuen Jin v. Mukasey*, 538 F.3d 143 (2d Cir.2008), because Zhu does not have a due process right in seeking a discretionary grant of a motion to reopen. *See id.* at 156–57.

For the foregoing reasons, the petition for review is DENIED. As we have completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34(b).

**UNITED STATES of America,
Appellee,**

v.

**Timothy McDARRAH, Defendant–
Appellant.**

**No. 07–1849–cr.**

United States Court of Appeals,
Second Circuit.

Nov. 5, 2009.

Lawrence M. Stern, New York, NY, for Defendant–Appellant.

Rebecca Monck Ricigliano, Assistant United States Attorney, for Michael J. Garcia, United States Attorney, Southern District of New York (Reed Michael Brodsky, Daniel A. Braun, Assistant United States Attorneys, on the brief), for Appellee.

PRESENT: WALKER, B.D. PARKER and REENA RAGGI, Circuit Judges.

## SUMMARY ORDER

Timothy McDarrah appeals a judgment of conviction in the United States District Court for the Southern District of New York (Crotty, *J.* ). McDarrah was convicted of attempted enticement of a minor through the use of a facility of interstate commerce, in violation of 18 U.S.C. § 2422(b), and was sentenced principally to 72 months' imprisonment. We assume the parties' familiarity with the facts, procedural history of the case, and issues presented on appeal.

### The Indictment

McDarrah argues that he was denied his right, under the Fifth Amendment, to trial pursuant to a properly framed indictment, because the indictment in this case did not specify a single overt act or substantial step taken in furtherance of the attempted enticement. We disagree.

■ The indictment in this case adequately informed McDarrah of the offense with which he was charged because it stated the elements of the crime, including the allegation of an attempt, and informed McDarrah of the means and time period of the charged conduct. *See United States v. Resendiz–Ponce,* 549 U.S. 102, 108, 127 S.Ct. 782, 166 L.Ed.2d 591 (2007). An indictment alleging attempt "need not specifically allege a particular overt act or any other 'component part' of the offense." *Id.* at 107, 127 S.Ct. 782 (internal citations omitted). That the offense conduct took place over a period of approximately two months rather than one day does not trigger a requirement that the indictment allege each overt act during the period. *See id.* at 108, 127 S.Ct. 782 (use of the word "attempt" coupled with the time and place information in the indictment rendered the indictment sufficient).

## The Search Warrant for McDarrah's AOL Account

The district court rejected McDarrah's pre-trial motion to suppress evidence obtained from the search of his AOL account, concluding that the warrant was supported by probable cause and was not overbroad. *United States v. McDarrah*, No. 05–cr–1182, 2006 WL 1997638, at *9–*10 (S.D.N.Y. July 17, 2006). McDarrah now renews his challenge to the admissibility of the evidence uncovered by the search of this account, asserting that the warrant was defective because it was overbroad and contained no supportive factual predicate suggesting that the messages, other than those between him and "Julie" or "David Smith," would be evidence of criminal activity.

■ We conclude that the warrant was sufficiently particular to "enable the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize." *United States v. George*, 975 F.2d 72, 75 (2d Cir.1992). The warrant described the items subject to search with particularized detail and did not include a catch-all provision providing for the search of "any other evidence" or allow for wide-ranging searches beyond what was described. That the particularized items encompassed much or all of the content within McDarrah's AOL account and the documents related to that account is not determinative. Instead, the relevant question is whether there was probable cause supporting the warrant's application to e-mail messages and account information other than the correspondence between McDarrah and "Julie" and "David Smith."

FBI Agent Austin Berglas stated in his affidavit that, based on his own experience, his conversations with other officers, and the facts set forth in the affidavit, he believed there was probable cause to believe that the items to be searched would contain evidence of violations of § 2422 and other federal laws. Upon reviewing the application, the magistrate judge could have determined there was ample evidence that a crime was committed and strong indication that further evidence of criminal activity could be found in e-mails between McDarrah and people other than "Julie" and "David Smith." The magistrate judge therefore had a "substantial basis" to conclude that a search of the messages in McDarrah's account other than those between him and "Julie" or "David Smith" would "uncover evidence of wrongdoing." *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Furthermore, a warrant need not be limited to a location where the conduct amounting to evidence of wrongdoing—such as the emails between McDarrah and "Julie"— has already been uncovered, as long as there is a sound basis to conclude that evidence of wrongdoing may be found in additional specified locations. *See United States v. Irving*, 452 F.3d 110, 125 (2d Cir.2006).

In any event, the good faith exception to the exclusionary rule would apply here, because the agents acted in good faith in seeking the warrant and reasonably relied upon it in conducting the search. *See United States v. Leon*, 468 U.S. 897, 920–22, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *United States v. Buck*, 813 F.2d 588, 592–93 (2d Cir.1987).

## The Evidentiary Rulings

McDarrah argues that the trial court erred in admitting (1) Agent Berglas's testimony as to McDarrah's state of mind, as "lay" opinion testimony under Federal Rule of Evidence 701; and (2) four e-mails McDarrah sent to erotic services advertisements on Craigslist as "other act" evidence under Federal Rule of Evidence 404(b). We review evidentiary rulings for

abuse of discretion. *United States v. Tocco,* 135 F.3d 116, 127 (2d Cir.1998).

Federal Rule of Evidence 701 allows witnesses to offer lay opinion testimony limited to inferences that are (a) rationally based on the perception of the witness; and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue. Rule 701 testimony is based on personal perceptions—interpretations that function as "an acceptable shorthand for the rendition of facts that the witness personally perceived." *United States v. Garcia,* 413 F.3d 201, 211 (2d Cir.2005) (internal quotation marks omitted.). However, Rule 701 specifically prohibits lay opinions "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." In *Garcia,* we held that the admissibility of a law enforcement officer's opinion testimony must be determined under Rule 701, not 701, if it "rests in any way upon ... specialized knowledge." 413 F.3d at 215 (internal quotation marks omitted). We concluded that Rule 701 was an improper basis to admit a law enforcement agent's opinion testimony that repeatedly used the word "we" as a means of discussing opinions based on "collaborative efforts of a team of law enforcement officers," because testimony in that posture indicated that the "opinion was not limited to [the agent's] personal perceptions." *Id.* at 212.

■ Here, the government repeatedly elicited "lay" opinion testimony from Berglas's testimony that violated these principles. Berglas testified that certain of McDarrah's exchanges with "Julie" were part of "a process *we* call grooming." (Trial Tr. 152 (emphasis added).) Berglas explained on direct that McDarrah's invitations to "Julie" were the start of a grooming process aimed to encourage "Julie" to trust him. Berglas explained one exchange as an escalation of the grooming process by which McDarrah "is making it totally clear that he just wants to gain my trust and—and that *he is totally serious about having sex,* and teaching me all these things, and buying me clothes, CDs, and anything else I wanted." (Trial Tr. 246 (emphasis added).) *Garcia* makes clear that this was not proper: Berglas's use of the word "we" signaled to the jury that his testimony was based upon knowledge he and other investigators had collectively acquired through their experience investigating conduct similar to McDarrah's, and therefore, was specialized knowledge rather than "lay" opinion. Moreover, by effectively telling the jury that, based on his specialized knowledge, the defendant was guilty of attempted enticement, Berglas veered into the territory we warned against in *United States v. Mejia,* 545 F.3d 179, 191 (2d Cir.2008), where government witnesses are "no longer aiding the jury in its factfinding: they are instructing the jury on the existence of the facts needed to satisfy the elements of the charged offense."

■ However, although we believe the district court abused its discretion in admitting the testimony, we conclude that its admission was harmless. An evidentiary error is harmless if the government demonstrates that it is "highly probable" that the error did not have a "substantial and injurious effect or influence" on the verdict. *United States v. Dukagjini,* 326 F.3d 45, 61–62 (2d Cir.2003) (internal quotation marks and citations omitted); Fed. R.Crim.P. 52(a).

Here, it is highly probable that, without regard to Berglas's interpretation, the jury could readily have concluded that McDarrah believed that "Julie" was a 13–year–old girl. For example, the majority of McDarrah's messages to "Julie" reflect an apparent belief on his part that she was a 13–year–old girl: he showed an immediate

interest in chatting with "Julie13NYC," and told her that the age of consent in New York is 17 "but I don't plan to wait that long." Those occasions when McDarrah seemed to question "Julie's" identity by suggesting she sounded "like a cop," were isolated and closely followed by further discussion of McDarrah's sexual interest in "Julie."

It is also highly probable that the jury would have concluded independently of Berglas's testimony that McDarrah's communications to "Julie" were not limited to an interest in chatting about sex and were intended to entice her to engage in sexual conduct. The transcripts reveal progressively more sexually explicit discussions that increasingly centered around McDarrah's efforts to coordinate a time to observe and to meet "Julie;" such exchanges were powerful evidence that McDarrah sought not simply to discuss but to actually engage in sexual conduct with "Julie."

In sum, though the agent's opinion testimony did not conform to Rule 701, the jurors could have drawn their own conclusions based on the transcripts of the exchanges, which included ample evidence of McDarrah's guilt. Accordingly, we believe it is highly probable that the jury would have found McDarrah guilty in the absence of the opinion testimony.

With respect to the "other act" evidence, McDarrah's e-mail responses to the Craigslist advertisements were relevant to his knowledge and intent, because he wrote those emails to girls he knew could be minors (he enthusiastically indicated that girls younger than 18 are acceptable) and his e-mails showed his interest in actual sexual conduct. There is an obvious similarity between McDarrah's four "other act" e-mails and his communications with "Julie," because they are virtually the same conduct. *See United States v. Brand,* 467 F.3d 179, 197–98 (2d Cir.2006)

(in prosecution under § 2422(b), possession of child pornography relevant to sexual interest in young girls met similarity requirement because of known link between child pornography and pedophilia). Furthermore, the district court issued a limiting instruction stating that the jury was to consider the four e-mails only when evaluating whether or not McDarrah's charged conduct was a mistake, accident, or otherwise innocent. *See United States v. Williams,* 205 F.3d 23, 34 (2d Cir.2000) (other act evidence not unduly prejudicial when it did not involve conduct more serious than the charged crime and where district court gave proper limiting instruction). There was no error in admitting the e-mails.

**The sufficiency of the trial evidence**

McDarrah argues that the evidence at trial was insufficient to convict him of attempted enticement, because his "grooming" correspondence with "Julie" was by definition preparatory conduct and the September 14, 2005 request that "Julie" come down from her apartment was a continuation of preparation, not a substantial step toward commission of enticement. McDarrah also maintains that the correspondence shows that he did not actually believe Julie was a 13–year–old girl.

When conducting sufficiency review on appeal, the relevant question is whether, when viewed in the light most favorable to the government and with all reasonable inferences drawn in the government's favor, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A jury may convict under § 2422(b) based on a finding that the defendant attempted to entice or persuade a minor to engage in illegal sexual activity and need not find that the de-

fendant attempted to engage in the illegal sexual activity itself. *Brand*, 467 F.3d at 201–02 (setting forth elements of § 2422(b) charge); *see also United States v. Bailey*, 228 F.3d 637, 639 (6th Cir.2000) ("While it may be rare for there to be a separation between the intent to persuade and the follow-up intent to perform the act after persuasion, they are two clearly separate and different intents and [by enacting § 2422(b) ] the Congress has made a clear choice to criminalize persuasion and the attempt to persuade, not the performance of the sexual acts themselves.").

■ A reasonable juror, after reading McDarrah and "Julie's" correspondence and listening to their taped conversations, could have determined that the tone and content of McDarrah's communications indicated that he believed "Julie" was a minor. Drawing all inferences in favor of the government, a reasonable juror could also conclude that McDarrah's messages to "Julie," particularly those discussing ways for the two to meet, comprised a series of substantial steps any number of which may have been taken in furtherance of an effort to entice her to engage in sexual conduct. *See Bailey*, 228 F.3d at 639–40 (sexually explicit correspondence provided sufficient evidence for attempt to entice conviction where defendant attempted to set up meetings but where no meeting ever took place). McDarrah's e-mail request that "Julie" meet him outside her apartment on September 14, 2005, corroborated that his previous e-mails were more than merely preparatory, and that he exhibited an intent to persuade a minor not just to *talk about* sex, but to *engage* in sexual conduct. A reasonable juror could also have concluded that the September 14 e-mail itself, coupled with McDarrah's presence at the designated location at that time, constituted a substantial step toward enticing a girl McDarrah believed to be 13 years old to engage in illegal sexual activity.

We have considered McDarrah's remaining challenges and find them to be without merit.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.