# United States Court of Appeals
## For the First Circuit

No. 10-2203

UNITED STATES OF AMERICA,

Appellee,

v.

JAVIER MITCHELL-HUNTER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Torruella, Stahl, and Thompson, Circuit Judges.

Rachel Brill, by Appointment of the Court, for appellant.
Justin Reid Martin, Assistant United States Attorney, with
whom Nelson Pérez-Sosa, Chief, Appellate Division, and Thomas F.
Klumper, Assistant United States Attorney, were on brief, for
appellee.

December 12, 2011

**STAHL**, <u>Circuit Judge</u>.    Defendant-appellant Javier Mitchell-Hunter (Mitchell) was charged with drug crimes under the Maritime Drug Law Enforcement Act (MDLEA), 46 U.S.C. §§ 70501-70508, after he was apprehended on a go-fast vessel in the Caribbean by a Coast Guard counter-narcotics patrol.  Before the district court, Mitchell moved for dismissal based on lack of jurisdiction under the MDLEA, arguing that use of State Department certifications memorializing the inability of Colombia and Venezuela to confirm or refute the go-fast's master's claim of national registry, without an opportunity to cross-examine their author, constituted a violation of his Sixth Amendment right to confrontation under <u>Crawford</u> v. <u>Washington</u>, 541 U.S. 36 (2004). The district court denied his motion to dismiss, finding that jurisdiction was adequately established and that there was no violation of the Confrontation Clause.  <u>United States</u> v. <u>Nueci-Pena</u>, No. 07-00888CCC, 2010 WL 759160 (D.P.R. Feb. 26, 2010).  This timely appeal followed.

## I. Facts and Background

On February 23, 2007, members of a United States Coast Guard enforcement team on counter-narcotics patrol in the Caribbean detected a suspicious go-fast vessel, which was not displaying registry numbers, a hailing port, or a national flag.  The Coast Guard boarded the vessel seeking to verify its national registry.

-2-

Francisco Nueci-Pena (Nueci) identified himself as the master of the ship.

The evidence is contradictory as to which nationality Nueci claimed. Contemporaneously, Petty Officer Hector Canaval, a member of the enforcement team that boarded the vessel, reported that Nueci claimed Colombian registry. United States Coast Guard Commander G. Philip Welzant, a designee of the Secretary of State, stated in his March 20, 2007 Certification for the Maritime Drug Law Enforcement Act Case Involving the Go-Fast Vessel (First Welzant Certification) that Colombian authorities were contacted but could neither confirm nor refute the vessel's registry. Thus, the vessel qualified as a "vessel without nationality," and was subject to the jurisdiction of the United States under the MDLEA, 46 U.S.C. § 70502(c)(1)(A), (d)(1)(C). Meanwhile, a February 27, 2007 affidavit by Federal Bureau of Investigation Special Agent Benjamin Walker, who was not present at the interdiction, stated that Nueci claimed Venezuelan registry, that Venezuelan authorities were contacted, and that they were unable to confirm or deny the vessel's registry (Walker Affidavit).

Regardless of the claimed nationality, Coast Guard personnel recovered burlap sacks from the go-fast vessel, which were later determined to contain 1,170 pounds of cocaine. Thereafter, on February 27, 2007, the Coast Guard brought the six members of the go-fast's crew, which included Mitchell, to shore in

San Juan, Puerto Rico. A criminal complaint was issued the same day with the Walker Affidavit attached. A federal grand jury from the District of Puerto Rico issued a second superseding indictment on April 4, 2007,[1] charging the members of the crew with one count of drug possession and one count of conspiracy to possess drugs with intent to distribute, in violation of the MDLEA, 46 U.S.C. §§ 70503(a)(1), 70504(b)(1), and 70506(b).

On October 23, 2007, Nueci and Mitchell moved for dismissal of the criminal complaint, arguing that Nueci had claimed Venezuelan registry consistent with the Walker Affidavit, and that because Commander Welzant had only certified that Colombia could not confirm or deny registry, jurisdiction of the United States under the MDLEA had never been established.[2] The motion also included a request for an evidentiary hearing on the issue of jurisdiction.

The government initially opposed the motion by arguing that "vessel without nationality" status had been properly ascertained via contact with the Colombian government, as memorialized in the First Welzant Certification. However, the government then went further, filing a supplemental opposition

---

[1] The first indictment, issued on March 7, 2007, included outdated section numbers of the MDLEA; the superseding indictment included the recodified section numbers.

[2] The Walker Affidavit, in addition to asserting that Nueci claimed Venezuelan registry, also stated that Venezuela had been contacted and could neither confirm nor deny the vessel's registry.

including a second Certification for the Maritime Drug Law Enforcement Act Case Involving the Go-Fast Vessel from Commander Welzant (Second Welzant Certification), dated January 15, 2008, describing the Coast Guard's contact with the Venezuelan government on that day. The Venezuelan government could neither confirm nor refute the go-fast vessel's registry. The government therefore asserted that the vessel was indeed "without nationality" and subject to the jurisdiction of the United States, regardless of which claim of registry Nueci had made.

On January 23, 2008, the parties met with a magistrate for a status conference on the pending motion to dismiss for lack of jurisdiction and the need for an evidentiary hearing. The parties agreed that an evidentiary hearing was not necessary and that jurisdiction could be determined on the papers. Importantly, as the magistrate later noted in the Supplemental Report and Recommendation (Supplemental R & R), "defense counsel voiced no objection to consideration of the [Welzant Certifications], nor did they request to cross-examine Commander Welzant or anyone providing responses on behalf of Colombia or Venezuela." The magistrate's status conference report stated, "The Court takes this matter under advisement. An order will be entered if the need for an evidentiary hearing arises." Without holding any hearing, the magistrate filed a Report and Recommendation, recommending that the

motion to dismiss be denied, which was adopted by the district court on April 9, 2008.

On November 28, 2008, now represented by new counsel, Mitchell filed a motion to supplement his previous motion to dismiss and again requested an evidentiary hearing. This time, Mitchell argued that the two Welzant Certifications were testimonial hearsay, and that under Crawford, their use in the pretrial jurisdiction determination, without an opportunity for cross-examination, constituted a violation of his Sixth Amendment right to confrontation. The district court again referred the matter to the magistrate judge. Finding that the right to confrontation was a trial right and therefore inapplicable to the pretrial jurisdiction determination, the magistrate filed a Supplemental R & R recommending denial of the motion. Mitchell, again represented by different counsel, timely filed objections to the Supplemental R & R, citing Crawford and also Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009), as support for his Sixth Amendment claim.

The district court agreed with the magistrate that the Confrontation Clause and Crawford did not apply before trial and found no other reason under the MDLEA to dismiss. The district court issued its decision adopting the Supplemental R & R and denying the motion on February 26, 2010. Nueci-Pena, 2010 WL 759160, at *6. Following the denial of the motion, Mitchell

-6-

entered into a plea agreement, reserving the right to appeal the issue of jurisdiction.  The district court entered judgment against Mitchell on September 15, 2010, and sentenced him to 70 months of imprisonment.

## II. Discussion

Determination of jurisdiction under the MDLEA is a question of law subject to de novo review.  United States v. Bravo, 489 F.3d 1, 6 (1st Cir. 2007).  Confrontation Clause challenges raising questions of law also merit de novo review.  United States v. Rodríguez-Durán, 507 F.3d 749, 768 (1st Cir. 2007).

### A. The MDLEA

Finding that drug trafficking at sea was a "serious international problem . . . present[ing] a specific threat to the security and societal well-being of the United States," 46 U.S.C. § 70501, Congress, via the MDLEA, made it unlawful to "knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance on board . . . a vessel subject to the jurisdiction of the United States," id. § 70503(a), which applies "even though the act is committed outside the territorial jurisdiction of the United States," id. § 70503(b).[3]

---

[3] The MDLEA is derived from Congress's power to "define and punish Piracies and Felonies committed on the high Seas . . . ." U.S. Const. art I, § 8, cl. 10; United States v. Matos-Luchi, 627 F.3d 1, 3 (1st Cir. 2010).

Among other categories of vessels, a "vessel without nationality" is "subject to the jurisdiction of the United States." Id. § 70502(c)(1)(A).  One type of vessel without nationality is "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality."[4]  Id. § 70502(d)(1)(C).  Therefore, assuming the equivocal responses of Colombia and Venezuela were adequately proven, the go-fast vessel qualified as a vessel without nationality, and was thus subject to the jurisdiction of the United States.

At the time of the events relevant to this case, the MDLEA stated that only a denial of the registry claim, and not an equivocal response, could be proved conclusively[5] by State Department certification. Id. § 70502(d)(2) (2006) (amended 2008) ("Verification or denial.  A claim of registry under paragraph (1)(A) or (C) may be verified or denied by radio, telephone, or similar oral or electronic means.  The denial of such a claim is proved conclusively by certification of the Secretary of State or

---

[4] Another definition of a vessel without nationality is a vessel on which "the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed."  Id. § 70502(d)(1)(A).

[5] "Conclusive proof" or "conclusive evidence" is that which is "so strong as to overbear any other evidence to the contrary." Black's Law Dictionary 636 (9th ed. 2009).

-8-

the Secretary's designee.") (emphasis added).[6] Though the Welzant Certifications did not rise to the level of conclusive proof in this case, the district court was correct in its finding that the Certifications were still relevant and admissible prima facie evidence of statelessness. Nueci-Pena, 2010 WL 759160, at *6 (citing United States v. Tinoco, 304 F.3d 1088, 1114 (11th Cir. 2002)). The only other evidence submitted pertaining to statelessness was that the go-fast vessel displayed no registry numbers, hailing port, or national flag, any of which would have indicated nationality under international law. See United States v. Matos-Luchi, 627 F.3d 1, 5 (1st Cir. 2010). Considering the totality of the evidence presented to the district court, and as the burden of proof is merely a preponderance, id., there was no error in concluding that the go-fast was a "vessel without nationality" under § 70502(d)(1)(C).[7]

---

[6] After the events relevant here, the statute was amended to clarify that any response, equivocal or definite, could be conclusively proven by State Department certification for purposes of establishing jurisdiction. 46 U.S.C. § 70502(d)(2) (2008) ("Response to a claim of registry. The response of a foreign nation to a claim of registry under paragraph (1)(A) or (C) may be made by radio, telephone, or similar oral or electronic means, and is proved conclusively by certification of the Secretary of State or the Secretary's designee.") (emphasis added).

[7] Citing no cases, Mitchell argues that the fact that the Second Welzant Certification was not submitted until nearly a year after Mitchell's arrest makes the evidence unfit for use in the jurisdictional determination. However, jurisdiction under the MDLEA may be established at any time prior to trial, United States v. Greer, 285 F.3d 158, 162 (2d Cir. 2002), and this Court has in the past upheld jurisdiction under the MDLEA that was established

-9-

## B. The MDLEA's Jurisdiction Determination and the Confrontation Clause

Mitchell's primary argument on appeal is that it was a violation of his Sixth Amendment right to confrontation for the district court to use the Welzant Certifications as evidence in the determination of jurisdiction under the MDLEA. Because the MDLEA's jurisdiction determination is relegated by statute to a pretrial conclusion of law by the judge, and because the confrontation right has never been extended beyond the context of a trial, this argument is without merit.

The MDLEA's jurisdiction determination is explicitly "not an element of an offense," and "[j]urisdictional issues arising under [the MDLEA] are preliminary questions of law to be determined solely by the trial judge." 46 U.S.C. § 70504(a). In addition to being statutorily defined as such, the jurisdictional determination would not be an "element" at common law either, because the "question of whether a vessel is subject to the jurisdiction of the United States . . . does not relate to whether a defendant committed the proscribed actus reus or possessed the necessary mens rea." United States v. Vilches-Navarrete, 523 F.3d 1, 21 (1st Cir.

---

when response from the claimed nation of registry was received five days after the vessel was boarded. United States v. Cardales, 168 F.3d 548, 551-52, 554 (1st Cir. 1999). Other circuits have held similarly. See United States v. Bustos-Useche, 273 F.3d 622, 627-28 (5th Cir. 2001); United States v. Medjuck, 48 F.3d 1107, 1111 (9th Cir. 1995). Thus, there was no error in basing jurisdiction on a certificate that was created after boarding and arrest but prior to trial.

-10-

2008), cert. denied, 129 S. Ct. 208 (2008). The MDLEA's "jurisdictional requirement, therefore, does not affect the defendant's blameworthiness or culpability, which is based on the defendant's participation in drug trafficking activities, not on the smoothness of international relations between countries." Tinoco, 304 F.3d at 1109.

In fact, the purpose of the MDLEA's jurisdictional requirement is not to protect a defendant's rights, but instead to maintain comity between foreign nations; the MDLEA's "subject to jurisdiction" provision is "a matter of diplomatic comity." Viches-Navarrete, 523 F.3d at 22; see also Tinoco, 304 F.3d at 1109 (noting that the MDLEA's jurisdiction requirement is "unique because it is not meant to have any bearing on the individual defendant, but instead is meant to bear only on the diplomatic relations between the United States and foreign governments"). The MDLEA's jurisdiction provision therefore is not concerned with a defendant's interests at trial, but instead with the rights of governments, determined by a judge prior to trial.[8]

Meanwhile, the Confrontation Clause has the opposite focus, providing that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses

---

[8] This is not to say that a defendant does not have an interest in the court having proper jurisdiction over him, or that a defendant does not have the right to contest such jurisdiction. The burden of establishing jurisdiction remains with the government.

-11-

against him . . . ." U.S. Const. amend. VI. This explicitly defendant-focused right has historically applied to testimony elicited at, and evidence produced for, trial. See Pennsylvania v. Ritchie, 480 U.S. 39, 52, 54 n.10 (1987) (opinion of Powell, J.) ("[T]he right to confrontation is a trial right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination," and does not "require the government to produce witnesses whose statements are not used at trial.")(internal quotation marks omitted); California v. Green, 399 U.S. 149, 157 (1970) ("[I]t is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause.") (emphasis added); Barber v. Page, 390 U.S. 719, 725 (1968) ("The right to confrontation is basically a trial right."), overruled on other grounds by Crawford, 541 U.S. 36.

Mitchell does not point to a single case extending the right to confrontation beyond the context of trial, although there is extensive case law declining to apply the confrontation right to various pre- and post-trial proceedings. See, e.g., United States v. Andrus, 775 F.2d 825, 836 (7th Cir. 1985) ("[T]he sixth amendment does not provide a confrontation right at a preliminary hearing."); United States v. Harris, 458 F.2d 670, 677-78 (5th Cir. 1972) ("There is no Sixth Amendment requirement that [defendants] . . . be allowed to confront [witnesses] at a preliminary hearing

-12-

prior to trial."); Peterson v. California, 604 F.3d 1166, 1170 (9th Cir. 2010) (concluding that the holdings of Andrus and Harris are not disturbed by the Supreme Court's holding in Crawford, which deals only with the admission of testimonial hearsay evidence at trial). See also United States v. Beydoun, 469 F.3d 102, 108 (5th Cir. 2006) (holding, in line with the majority of circuits, that the confrontation right as defined by Crawford does not apply at a sentencing hearing); United States v. Hernandez, 778 F. Supp. 2d 1211, 1227 (D.N.M. 2011) (the right to confrontation does not apply at detention hearings); United States v. Bibbs, 488 F. Supp. 2d 925, 926 (N.D. Cal. 2007) (same); United States ex rel. Smith v. Pate, 305 F. Supp. 225, 227 (N.D. Ill. 1969) (right to confrontation does not apply at suppression hearing) (citing McCray v. Illinois, 386 U.S. 300, 313-14 (1967)).

Finally, recent Supreme Court jurisprudence on the Confrontation Clause has not extended its reach beyond the context of trial. The question posed in Crawford was whether, in addition to the right to cross-examine witnesses whose testimony was elicited at trial, the defendant has the right to cross-examine declarants who produced evidence prior to trial that later would be introduced at trial. Crawford, 541 U.S. at 42-43 (explaining that the resolution of the case depended on whether the Court determined that the right to confrontation solely applied to witnesses who testify at trial or whether it also applied to witnesses whose

"statements are offered at trial"). While Crawford made clear that the admission of certain testimonial hearsay would violate the Confrontation Clause absent an opportunity for cross-examination and the unavailability of the declarant, id. at 68, a violation would only occur if these statements were introduced at trial, see Bullcoming v. New Mexico, 131 S. Ct. 2705, 2713 (2011) ("As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness.") (emphasis added); see also Peterson, 604 F.3d at 1170 (holding that Crawford applies only to statements introduced at trial).

Mitchell claims that Melendez-Diaz provides support for his claim that he is entitled to cross-examine Commander Welzant. While Melendez-Diaz did hold that certain government-prepared certificates were testimonial hearsay and their use, without cross-examination, constituted a Confrontation Clause violation, the Court noted that the certificates were "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," and in fact their "sole purpose" was to provide evidence of the offense at issue. 129 S. Ct. at 2532 (first emphasis added; second emphasis in original). Under the MDLEA, the Welzant Certifications explicitly do not go toward proving an element of the offense, see

-14-

Vilches-Navarrete, 523 F.3d at 21, and an objective State Department designee would not expect that the certifications would be used at trial, as they are relegated by statute to the pretrial jurisdiction determination, see 46 U.S.C. § 70504(a). The certifications at issue here are therefore entirely dissimilar to those used in Melendez-Diaz in purpose and function. Mitchell is no closer to showing a Confrontation Clause violation than was the defendant in the pre-Melendez-Diaz case, United States v. Angulo-Hernández, 565 F.3d 2 (1st Cir. 2009), where we declared our "serious[] doubt" that admission of State Department certificates constituted a Confrontation Clause violation, id. at 12. In this non-trial context, where evidence does not go to guilt or innocence, courts have not applied the Confrontation Clause, and we need not do so here. To be clear, we need not and do not decide whether the Confrontation Clause could ever apply to pretrial determination, but only find that it does not apply in the circumstances of this case.

## C. Mitchell's Right to an Evidentiary Hearing

Given that Mitchell's confrontation claim fails, his ultimate complaint boils down to the fact that he never received a live evidentiary hearing on the motion to dismiss for lack of jurisdiction. To begin, Mitchell was in fact offered the opportunity for this very evidentiary hearing by the magistrate on

January 23, 2008, which he declined when the parties agreed the matter could be decided on the papers.

In addition, "the decision of whether to conduct an evidentiary hearing is left to the sound discretion of the district court," subject to review for abuse of discretion. United States v. Brown, 621 F.3d 48, 57 (1st Cir. 2010) (citing United States v. Calderon, 77 F.3d 6, 9 (1st Cir. 1996)). The test for whether an evidentiary hearing is required is whether the defendant made "a sufficient threshold showing that material facts were in doubt or dispute." United States v. Panitz, 907 F.2d 1267, 1273-74 (1st Cir. 1990) (citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978)).

Here, there was no abuse of discretion in denying the request for an evidentiary hearing. No material facts regarding jurisdiction were in doubt or dispute at the time Mitchell re-requested an evidentiary hearing in his motion filed on November 28, 2008. The First Welzant Certification was submitted on March 20, 2007, and the second was filed on January 15, 2008. At that stage, either the vessel was stateless because Colombia could not confirm nor refute its registry, or it was stateless because Venezuela had issued the same equivocal response. Mitchell made no argument that the vessel was registered with a third country or was otherwise outside the jurisdiction of the United States under the MDLEA. The district court therefore had sufficient evidence to

conclude that the Welzant Certifications together established statelessness, and that no material facts regarding the jurisdictional determination were in dispute. There was no abuse of discretion in denying the evidentiary hearing when Mitchell re-requested it.

## III. Conclusion

Finding no merit in Mitchell's arguments on appeal, we affirm.