912 P.2d 1318

**STATE of Arizona, Respondent,**

v.

**M.L. RAY, Petitioner.**

**Nos. 1 CA–CR 91–1649–PR, 1 CA–CR 94–0167–PR.**

Court of Appeals of Arizona, Division 1, Department D.

Aug. 22, 1995.

Review Denied March 19, 1996.

Grant Woods, Attorney General by Galen H. Wilkes, Assistant Attorney General, Phoenix, for respondent.

James R. Hart, II, Phoenix, for petitioner.

## OPINION

VOSS, Judge.

Defendant and five co-defendants were originally charged by indictment (CR–157256) with twenty-one property crimes, including fraudulent schemes, theft, trafficking in stolen property, altering and/or removing vehicle identification numbers (VINs), and conducting an illegal enterprise. The charges arose out of an undercover investigation of local "chop shops" jointly conducted by the Phoenix Police Department and the Arizona Department of Public Safety. During the summer and fall of 1984, undercover officers surveilled Defendant's salvage operation and also conducted several undercover sales of stolen auto parts directly to Defendant.

In January of 1985, the police executed search warrants on all four of Defendant's

salvage yards and on his home. The charges contained in the indictment in CR–157256 were based on the conduct of Defendant and his five co-defendants during the course of the undercover operation. Several months after the indictment was handed down, one of the five co-defendants, Gerald Dempsey, agreed to testify against Defendant. Mr. Dempsey provided the State with evidence that Defendant had been involved in illegal trafficking activities for about two years prior to the undercover operation. As a result of this evidence, the State brought a second and third indictment (CR–162599 & CR–162669) against Defendant and three different co-defendants. The indictments charged numerous additional property crimes.

Defendant was found guilty by a jury of fourteen out of twenty-one counts in CR–157256 and was sentenced to an aggregate term of twenty years imprisonment. Thereafter, Defendant was found guilty by another jury of all twenty-eight counts in CR–162599 and CR–162669 and was sentenced to an aggregate term of thirty years imprisonment, to run concurrently with his sentences in CR–157256. Defendant filed notices of appeal in both cases, followed by petitions for post-conviction relief pursuant to Rule 32 of the Arizona Rules of Criminal Procedure (Rule). Separate trial judges summarily dismissed the Rule 32 petitions. Defendant filed a petition for review of the denial of Rule 32 relief in CR–157256 only, which petition was consolidated with his direct appeal.

Another panel of this court filed separate memorandum decisions in each case. In cause number CR–157256, this court affirmed in part, reversed the conviction in Count V, remanded for resentencing on Count III, and granted Rule 32 relief in the form of a remand for an evidentiary hearing on Defendant's ineffective assistance of counsel claims. *State v. Ray*, 1 CA–CR 11772/ CR–12253/CR 88–1439–PR/CR 89–0073–PR (Memo. Dec. April 3, 1990). Thereafter, on motions for reconsideration, the court clari-

fied its decision in CR–157256 regarding the issues to be addressed at the Rule 32 evidentiary hearing. *State v. Ray*, 1 CA–CR 11772/ CR–12253/CR 88–1439–PR/CR 89–0073–PR (Supplemental Memo. Dec. August 16, 1990). In cause numbers CR–162599/CR–162669, this court affirmed the judgments of conviction and sentence. *State v. Ray*, 1 CA–CR 88–443/CR 88–444/CR 88–632 (Memo. Dec. April 3, 1990).[1]

After both of Defendant's petitions for review by the Arizona Supreme Court were denied, counsel filed a supplement to the original Rule 32 petition in CR–157256. The supplement expanded on the issues raised in the original petition. Defendant also filed a second Rule 32 petition in CR–162599/CR–162669, in which he again complained about the ineffectiveness of his trial counsel; however, his complaint was based upon a rationale different from the one that he argued on direct appeal.

In this second petition, Defendant argued that his trial counsel was ineffective for failing to attack the search warrant in CR–157256 because the evidence seized in that case was also introduced at the trial of CR–162599/CR–162669 as evidence of Defendant's prior bad acts. The trial court summarily dismissed this second Rule 32 petition because it was precluded. The petition for review from that order was stayed by this court pending the outcome of the evidentiary hearing in CR–157256.

A two-part evidentiary hearing was conducted by Judge Ellis. The first part concerned issues regarding the validity of the search warrants. The facts presented through the testimony of the affiant and the finder on the search warrants are set forth in detail in the trial court's comprehensive order denying relief.

Detailed procedures were established before the search was conducted by law enforcement. Due to the nature of the extensive "chop shop" activity being conducted by

---

1. Although Defendant never filed a petition for review of the summary denial of his first Rule 32 petition in CR–162599 and CR–162669, an issue regarding trial counsel's ineffectiveness was presented, addressed, and rejected in the direct appeal of these cases.

Defendant, and the extensive inventory that was spread throughout his auto salvage yards, each of the four properties was divided into grids that were assigned to several two and three-person search teams. The teams were briefed before execution of the search warrant regarding the items they were to look for: (1) specific property actually listed in the search warrant, (2) any major component vehicle part with a missing or altered VIN plate, and (3) any major component vehicle part with a VIN attached, which would then be run through an on-site police computer for stolen reports.

There were several categories of vehicle parts that were not examined by the search teams because they do not normally bear a VIN, such as: bumpers, rear axles, radios, suspensions, mufflers, steering columns, and gas tanks. From among the hundreds of thousands of vehicle parts stored on Defendant's four properties, the police prepared a total of 1,023 information cards which were used for further on-site inspection. Only 163 items were actually seized as contraband.

The trial court found that the search warrants in this case were not the type of general search warrant prohibited by the Fourth Amendment. The court ruled that the very nature of Defendant's on-going "chop shop" operation, which involved potentially millions of individual car parts, precluded exactness in the description of the contraband. With regard to the execution of the warrants, the trial court found that the officers had not acted unreasonably, and the searches were not overbroad. The grid search method and the use of on-site computers prevented blanket seizures of questionable items and helped officers complete their task within the time limits authorized by the warrant. The trial court found, pursuant to the standards set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), that no reasonable probability existed to believe that the result of the proceedings would have been different if trial counsel had filed a motion to suppress evidence.

The second portion of the evidentiary hearing involved the presentation of testimony regarding the remaining issues of trial counsel's ineffectiveness. Defendant called several witnesses who claimed that they could have impeached the credibility of co-defendant, Gerald Dempsey, as well as the credibility of the victim in Count XXI. Defendant blamed trial counsel's overall deficiencies in investigation and preparation of the case on counsel's substance abuse problems.

In a lengthy written decision, the trial court thoroughly discussed the factual circumstances surrounding Defendant's claims of counsel's ineffective assistance. The trial court then set forth specific conclusions regarding the separate categories of issues raised by Defendant. Guided by the *Strickland* standard of review, the trial court denied post-conviction relief on all of Defendant's claims.

## ISSUE

We grant review to consider whether the warrant issued to search Defendant's salvage yards violated the Fourth Amendment; and if so, whether defense counsel's failure to challenge the legality of the search warrant violated Defendant's constitutional right to effective assistance of counsel.

## DISCUSSION

Because the trial court thoroughly and correctly ruled on the issues raised by Defendant, we need only discuss the search warrant issue. *See State v. Whipple*, 177 Ariz. 272, 274, 866 P.2d 1358, 1360 (App.1993) (explaining that where each issue raised in a petition for post-conviction relief has been clearly identified and correctly ruled upon, no useful purpose is served by rehashing the issues on appellate review).

■■■ A search warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." Amendment IV, United States Constitution. The particularity requirement set forth in the Fourth Amendment prevents the government from utilizing broad language in a search warrant so as to effectuate general, exploratory searches and seizures. *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976). However, the requirement of particularity is not so

rigid as to mandate that every item seized by the police must be specifically listed in the warrant before seizure is authorized. *State v. Terrell,* 156 Ariz. 499, 501, 753 P.2d 189, 191 (App.1988). When deciding whether a warrant is too general, the trial court must consider the nature of the property sought to be recovered. *Id.; State v. Robinson,* 139 Ariz. 240, 241, 677 P.2d 1348, 1349 (App. 1984).

■ The search warrants executed in this case were supported by a thirty-three page affidavit that provided probable cause to believe that specifically listed stolen parts from named vehicles used in the undercover transactions between officers, Defendant, and several co-defendants would be found on Defendant's commercial property. The facts uncovered during the investigation were set forth in the affidavit and clearly supported the conclusion that Defendant was the principal in a continuing business of trafficking in stolen property. Thus, the warrants also authorized the seizure of a particular class of items, described as major component parts of vehicles believed to be stolen or bearing removed, defaced, altered, or destroyed VINs.

In a similar case, the Seventh Circuit found that a search warrant authorizing the seizure of items by category in a "chop shop" operation does not violate the particularity requirement of the Fourth Amendment. *United States v. Shoffner,* 826 F.2d 619, 631–32 (7th Cir.), *cert. denied,* 484 U.S. 958, 108 S.Ct. 356, 98 L.Ed.2d 381 (1987). The court correctly reasoned that a "chop shop" business typically involves many removable vehicle parts that make it impossible to describe exactly what the police will find when conducting the search. *Id.*

■ Contrary to Defendant's allegations, the warrants did not authorize—nor did the police engage in—a general inspection of every part located on Defendant's property. The officers were directed to examine only major component parts which would or should display a VIN or serial number. Several categories of parts were not examined at all. When a component part was found to contain a VIN, the searching officer would record the information on a card, which information would then be run through the on-site police computer. Such actions were not beyond the scope of the warrant and do not constitute impermissible exploratory searches and seizures. *Cf. Arizona v. Hicks,* 480 U.S. 321, 324, 107 S.Ct. 1149, 1152, 94 L.Ed.2d 347 (1987) (holding that the mere act of recording serial numbers did not constitute a seizure, because it did not "meaningfully interfere" with suspect's possessory or privacy interest).

The trial court's rulings on the validity of the search warrants executed in this case are entirely supported by the facts and applicable law. As a result, Defendant has been unable to establish that he was prejudiced in any way by his trial counsel's failure to file a motion to suppress the evidence used against him at both of his trials. *See Strickland,* 466 U.S. 668, 104 S.Ct. 2052; *State v. Gerlaugh,* 144 Ariz. 449, 455, 698 P.2d 694, 700 (1985).

*Review granted; relief denied.*

NOYES, P.J., and THOMPSON, J., concur.