NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

THOMAS LEELAND DILLION, *Appellant.*

No. 1 CA-CR 18-0620
FILED 10-31-2019

Appeal from the Superior Court in Mohave County
No. S8015CR201500312
The Honorable Richard D. Lambert, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist, III
*Counsel for Appellee*

Mohave County Legal Advocate, Kingman
By Jill L. Evans
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge James B. Morse Jr. joined.

---

J O H N S E N, Judge:

¶1          Thomas Leeland Dillion appeals his convictions and resulting sentences on 10 counts of sexual exploitation of a minor. Dillion argues the superior court erred in denying his motion for discovery and his motion to suppress, and in finding that he voluntarily absented himself from trial after he attempted to commit suicide. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2          FBI agents executed a search warrant at Dillion's home, where they seized his computer and found more than 10,000 images and 350 videos of child pornography on the hard drive. Dillion was indicted on 23 counts of sexual exploitation of a minor, each a Class 2 felony: ten charges of possessing and 13 charges of distributing child pornography.

¶3          Before trial, the State dismissed the 13 distribution charges. After a two-day trial, the jury convicted Dillion of all ten charges of possession of child pornography and found all to be dangerous crimes against children. The superior court sentenced Dillion to consecutive 10-year prison terms on Counts 1-6 and 8-10 and imposed a 10-year sentence for Count 7, to run concurrent with the term imposed for Count 3, for a total term of 90 years. Dillion timely appealed.[1] We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised

---

[1]      The State moved to dismiss Dillion's appeal, citing Arizona Revised Statutes section 13-4033(C) (2019). We deny the motion because we are unable to conclude from the record that Dillion's absence from trial prevented sentencing from occurring within 90 days following his convictions.

Statutes ("A.R.S.") sections 12-120.21(A)(1) (2019), 13-4031 (2019) and -4033(A)(1) (2019).[2]

## DISCUSSION

### A.    Denial of Dillion's Motion for Disclosure.

¶4        Dillion first contends the superior court erred when it denied his motion for disclosure of the software program the FBI used to identify his ISP address as being involved with child pornography. We review the denial of a motion for discovery for an abuse of discretion. *State v. Garza*, 216 Ariz. 56, 65, ¶ 35 (2007).

¶5        The FBI investigates the distribution of child pornography over the internet using a software program designed to search for files known to contain child pornography in the publicly shared folders of a user's computer. Essentially, the software is a modified bit torrent program that downloads files from single sources rather than from multiple sources. This permits the FBI to identify a specific IP address associated with a download of an image or video containing child pornography.

¶6        At the evidentiary hearing on Dillion's motion for disclosure of the program, his computer expert, Tami Loehrs, testified she was concerned that the FBI software might not be working the way it was supposed to. Loehrs testified that when she inspected Dillion's computer, she discovered that five files the FBI asserted were in his public folder either were absent altogether or were located in private folders on his hard drive. The State's witness avowed that the FBI program only searches the publicly shared files on a user's computer and speculated that, during the seven weeks between the investigation and the seizure of his computer, Dillion had moved the files out of the public folder into a private folder. This theory was supported by Dillion's statement to investigators that he typically moved child pornography from his download file to hidden files on his computer.

¶7        At the end of the hearing, the State announced it would dismiss the 13 distribution charges. The superior court then denied Dillion's motion for disclosure, finding that the defense's allegations regarding malfunctioning of the FBI's software were only "vague speculation."

---

[2]        Absent material revision after the date of an alleged offense, we cite the current version of a statute or rule.

¶8 "The prosecution is required to disclose any material exculpatory evidence to the defense." *State v. Spears*, 184 Ariz. 277, 287 (1996). Evidence is material only when there is a reasonable probability that it would have changed the outcome of the trial. *Id.*

¶9 Here, Dillion fails to demonstrate how the discovery he sought was material to the child pornography possession charges he ultimately faced at trial. Although his expert questioned whether the FBI's program searched for child pornography only in the publicly shared folders on Dillion's computer, she never questioned the program's ability to locate child pornography or to identify a single source IP address. Nor did she question that child pornography was located on Dillion's hard drive.

¶10 Dillion cites *United States v. Budziak*, 697 F.3d 1105, 1107, 1112 (9th Cir. 2012), in which the court held the defendant made a sufficient showing that a similar software program used by the FBI to find child pornography was material to his defense. The defendant in that case was charged with distributing child pornography, and the Ninth Circuit Court of Appeals held the district court abused its discretion by denying his motion for discovery. *Id.* at 1108, 1113. The court explained the charges were "predicated largely on computer software functioning in the manner described by the government." *Id.* at 1113. Here, by contrast, by the time of trial, the only charges Dillion faced were for possession of child pornography, not distribution. Thus, the functionality of the FBI's program was not at issue. The superior court did not abuse its discretion by denying Dillion's motion for disclosure.

## B. Denial of Dillion's Motion to Suppress.

¶11 Dillion next argues the superior court erred by denying his motion to suppress, arguing the search warrant was not sufficiently particularized. The Fourth Amendment requires a search warrant to "particularly describe the place to be searched, and the persons or things to be seized." *State v. Ray*, 185 Ariz. 89, 92 (App. 1995) (quoting U.S. Const. amend. IV). The "particularity requirement . . . prevents the government from utilizing broad language in a search warrant so as to effectuate general, exploratory searches and seizures." *Id.* "When deciding whether a warrant is too general, the trial court must consider the nature of the property sought to be recovered." *Id.* at 93. Courts also consider "whether it was reasonable to provide a more specific description of the items at that juncture of the investigation." *United States v. Banks*, 556 F.3d 967, 973 (9th Cir. 2009).

4

¶12        Because the search here involved federal agents, the United States Constitution controls our analysis. *State v. Gonzalez-Gutierrez*, 187 Ariz. 116, 117, n.1 (1996). We review the denial of a motion to suppress for an abuse of discretion; however, we review constitutional issues and purely legal issues *de novo*. *State v. Dean*, 241 Ariz. 387, 389, ¶ 4 (App. 2017). "We consider only 'evidence presented at the suppression hearing and view the facts in the light most favorable to sustaining the trial court's ruling.'" *Id.* at 388, ¶ 2 (quoting *Brown v. McClennen*, 239 Ariz. 521, 523, ¶ 4 (2016)).

¶13        Dillion argues the search warrant was overly broad because it permitted officers to search for child pornography on any computer, software program or electronic data storage device inside his home. The agent who authored the search warrant provided an affidavit explaining the unique challenges modern technology presents in a search for child pornography. The affidavit stated that users can transfer files among a variety of devices, cited the large storage capacity of computer devices and online accounts, and pointed out that users can easily connect anonymously with other computers around the world to obtain child pornography. The agent gave the same facts at the suppression hearing, including the fact that once child pornography is downloaded from the internet, it easily can be transferred to another digital storage device, computer, flash drive or disk. The superior court denied the motion to suppress, finding the search warrant was sufficiently particularized, especially considering the FBI did not know on which of Dillion's devices they would find child pornography.

¶14        The affidavit on which the warrant was issued sufficiently explained how all the computer devices in the home could be used to communicate and store large amounts of child pornography. *See Banks*, 556 F.3d at 973; *United States v. Campos*, 221 F.3d 1143, 1147 (10th Cir. 2000). Computer files, by their nature, are "highly manipulable." *United States v. Farlow*, 681 F.3d 15, 19 (1st Cir. 2012). As the superior court pointed out, the FBI could not know beforehand on which device or devices the child pornography was hidden. *See Banks*, 556 F.3d at 973 ("no way to know where the offending images had been stored"). On these facts, the court did not abuse its discretion by finding the warrant was particular enough to "pass constitutional muster." *Farlow*, 681 F.3d at 18-19 (affidavit established that child pornography could have been found "in different forms and on different devices").

¶15        Dillion nevertheless argues that the search warrant should have been limited to the bit torrent software that the FBI knew Dillion had used to download child pornography. We agree with the superior court that limiting the warrant in such a manner could have left enormous

amounts of child pornography behind on his devices. *See United States v. Richards,* 659 F.3d 527, 541-42 (6th Cir. 2011).

**¶16**   For these reasons, the superior court did not abuse its discretion when it denied Dillion's motion to suppress.

## C. **Dillion's Absence from Trial.**

**¶17**   When Dillion failed to appear in court on the first day of trial, the prosecutor sent police to his home to check on him. Officers discovered Dillion bleeding from a gunshot wound to the head. Dillion told the officers that he had tried to kill himself. He was then hospitalized. Dillion's attorney asked the court to continue trial, but the court denied the request, finding that Dillion had waived his right to be present at trial.

**¶18**   Two weeks after the verdict, defense counsel moved for a mental-health examination of Dillion to determine whether he had voluntarily absented himself from trial. Dillion also filed a motion for new trial, arguing the court erred in ruling on the first day of trial that his failure to appear was voluntary. The State filed objections to both motions. Before ruling, the court set a status conference. Dillion did not appear for the conference, which occurred roughly a month after trial. At the conference, defense counsel told the court that Dillion had been released from the hospital and that before the trial, counsel had advised Dillion of the date trial was to begin. The superior court then issued a bench warrant for Dillion's arrest. The court ultimately denied both of Dillion's pending motions, citing a previous mental-health screening of Dillion and its own observations of Dillion's appearance and manner in court appearances.

**¶19**   On appeal, Dillion argues the superior court erred when it proceeded to try him *in absentia* after he tried to kill himself on the morning of the first day of trial and later denied his motion for a competency examination. We review for an abuse of discretion a superior court's determination that a defendant has waived his presence at trial. *State v. Reed*, 196 Ariz. 37, 38, ¶ 2 (App. 1999).

**¶20**   The Sixth Amendment guarantees a criminal defendant's right to be present at trial. *Reed*, 196 Ariz. at 38, ¶ 3; *see also* U.S. Const. amend. VI; *cf.* Ariz. Const. art. 2, § 24. Nonetheless, a "defendant may voluntarily relinquish the right to attend trial." *Reed*, 196 Ariz. at 38, ¶ 3 (quoting *State v. Garcia-Contreras*, 191 Ariz. 144, 147, ¶ 9 (1998)). Arizona Rule of Criminal Procedure 9.1 permits the superior court to infer that a defendant's absence is voluntary when "the defendant had personal notice of (1) the time of the proceeding, (2) the right to be present at it, and (3) a

warning that the proceeding would go forward in his or her absence." *State v. Sainz*, 186 Ariz. 470, 472 (App. 1996). It is the defendant's burden to establish that his absence was involuntary. *Reed*, 196 Ariz. at 39, ¶ 3. "[D]epending on the circumstances, absence occasioned by attempted suicide may be a voluntary waiver of the right to be present at trial." *Id.* at 39, ¶ 7.

¶21        Dillion does not argue that he lacked notice of the trial date or his right to be present at trial; nor does he assert he did not know the trial would go forward if he failed to appear. Instead, he argues his mental state at the time rendered his absence involuntary. Dillion argues the court should not have ruled his absence was voluntary without first granting his motion for a mental-health examination.

¶22        In reviewing the court's rulings, we look for guidance to authorities concerning when a defendant is entitled to a mental-health examination to determine his or her competence to stand trial.[3] A defendant has a due-process right "not to be tried or convicted while incompetent." *State v. Amaya-Ruiz*, 166 Ariz. 152, 161 (1990) (quoting *Drope v. Missouri*, 420 U.S. 162, 172 (1975)). A defendant has a right to a mental-health examination to determine competence when reasonable grounds for an examination exist. *Id.* at 162. "Reasonable grounds exist when 'there is sufficient evidence to indicate that the defendant is not able to understand the nature of the proceeding against him and to assist in his defense.'" *Id.* (quoting *State v. Borbon*, 146 Ariz. 392, 395 (1985)). "In determining whether reasonable grounds exist the Arizona Supreme Court has repeatedly held that the trial judge is given broad discretion and unless there has been a clear abuse of discretion he will be upheld on appeal." *State v. Messier*, 114 Ariz. 522, 525 (App. 1977).

¶23        As for whether there were reasonable grounds to order a mental-health examination to determine whether Dillion voluntarily waived his right to be present for trial, we begin with the proposition that a suicide attempt, by itself, does not require a finding that a defendant's absence from trial was involuntary. *See Reed*, 196 Ariz. at 39, ¶ 7 ("[D]epending on the circumstances, absence [from trial] occasioned by attempted suicide may be a voluntary waiver of the right to be present at trial."). Whether the superior court abused its discretion by refusing

---

[3]        We need not address in this case the difference, if any, between the mental state required to voluntarily waive one's right to be present at trial and the mental state required to be competent to stand trial.

Dillion's request for an examination and denying his motion for new trial depends on the particular circumstances in which the court ruled.

¶24 In August 2015, more than two years before trial, Dillion's attorney filed a motion for a competency examination. Counsel withdrew that motion six months before trial, however, after the prescreen report found Dillion was competent. The psychologist who performed the prescreen observed:

> [Dillion] was oriented to time, place, person, and situation, his motor activity appeared to be normal, and his speech was coherent. Relative to thought processes, associations seemed logical, there did not appear to be evidence of delusions or hallucinations, and there did not appear to be evidence of a cognitive impairment. . . . Mr. Dillion indicated that he was troubled with some anxiety that included a lot of worries about his charges.

> \* \* \*

> Mr. Dillion said that he wasn't troubled with any emotional/psychological problems, hadn't previously met with a psychologist, never met with a psychiatrist. . . . Concerning symptoms, Mr. Dillion said that he was a little depressed, experienced some anxiety and mood swings, said that he cries easily, said that he worries a lot about the charges he is facing . . . . Mr. Dillion said that he had some thoughts about hurting himself since his arrest, said that he would never try anything, and said that he has never attempted suicide.

> \* \* \*

> Mr. Dillion's responses during the evaluation included admissions that he . . . recently has had some thoughts about hurting himself, symptoms which appeared to have surfaced as a result of his legal troubles.

¶25 The psychologist concluded that while "distressed about his legal troubles," Dillion was competent to stand trial and rationally aid in his defense. Although the psychologist suggested he might have a pedophilic disorder and a cannabis use disorder, he diagnosed no mental illness. In short, the evaluation supported the conclusion that Dillion's mental distress

and suicidal thoughts were connected to the charges, not to an underlying mental illness.

¶26        Beyond the prescreen report, Dillion points to nothing in the record from which the superior court should have suspected that on the morning of the first day of trial, he could not voluntarily control his actions. Dillion was not in pretrial detention and yet had appeared for each court date over the two years before trial.  He was present at the final trial management conference a month before trial.  The court had several opportunities to observe Dillion during his many pretrial court appearances.  The record does not show any instances of Dillion acting out or having to be reprimanded about his behavior.  Finally, Dillion told officers on the morning of trial that he attempted to commit suicide.  *See United States v. Crites*, 176 F.3d 1096, 1098 (8th Cir. 1999) ("[The defendant] clearly expressed his desire to be absent by intentionally ingesting a potentially lethal mix of intoxicants and by leaving a suicide note.").

¶27        Based on the record, the superior court did not abuse its discretion in concluding, without ordering a mental-health examination, that Dillion had voluntarily waived his presence at trial by attempting suicide.  *See Reed*, 196 Ariz. at 39, ¶ 7 (Because the defendant "made a voluntary decision to try to end his life and thereby avoid his trial, the trial court did not err in finding that his suicide attempt and consequent hospitalization constituted a voluntary waiver of his right to be present at the remainder of his trial.").

**D.        Constitutionality of Dillion's 90-Year Sentence.**

¶28        Finally, Dillion argues that his 90-year sentence mandated by A.R.S. §§ 13-705 (2019) and -3553 (2019) violates the Eighth and Fourteenth Amendments.  Our supreme court has held sentences imposed under this statutory scheme are constitutional.  *State v. Berger*, 212 Ariz. 473, 474, ¶¶ 2-3, 483, ¶ 51 (2006).  Because "[w]e are bound by decisions of the Arizona

Supreme Court and have no authority to overrule, modify, or disregard them," we reject this argument. *Myers v. Reeb*, 190 Ariz. 341, 342 (App. 1997) (citation omitted).

## CONCLUSION

**¶29**  For the foregoing reasons, we affirm Dillion's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA