NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

THOMAS TOLWORTHY, *Appellant*.

No. 1 CA-CR 21-0330
FILED 8-16-2022

Appeal from the Superior Court in Maricopa County
No. CR2018-001320-001
The Honorable Glenn A. Allen, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Robert W. Doyle
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Angela K. Paton and Judge Peter B. Swann joined.

**C R U Z**, Judge:

¶1            Thomas Tolworthy appeals his convictions and sentences for ten counts of sexual exploitation of a minor, class two felonies and dangerous crimes against children.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2            BitTorrent is a peer-to-peer computer network used to "trade files back and forth from one computer to the next" over the internet.  Typically, a person with the proper software inputs a search term, and other computers connected to BitTorrent that have files satisfying the search parameters transmit those files to a designated folder in the person's computer.  Only after a file is downloaded is the person who searched for the file able to view it.

¶3            The Internet Crimes Against Children Task Force ("ICAC") uses "undercover" software "that go[es] out and actively search[es] those peer-to-peer networks for individuals who are possessing and making available for distribution known images or files that contain sexually exploitive material of children."   In February 2015, the ICAC "obtained some downloads" of child pornography from an internet protocol ("IP") address that used a peer-to-peer network program called Torrent.  After further investigation, Detective Snyder of the ICAC learned that the IP address was assigned to a residence in Mesa.  Detective Snyder then obtained a search warrant for the home.

¶4            On April 30, 2015, police officers served the warrant and found no evidence of illegal activity on the electronic devices they located there. When officers asked the homeowner whether anyone else had access to his home's secured Wi-Fi connection, he explained that his cousin, Tolworthy, had relocated from Texas and stayed with him in February 2015 until he moved into his own residence.  Although the homeowner described Tolworthy as primarily using a laptop computer, he told police that Tolworthy left a desktop computer "boxed up" in the garage when he

moved to his new home. It appears from the record that Tolworthy's desktop was not at the homeowner's residence when the warrant was served.

¶5 Detective Snyder immediately coordinated a confrontation call between the homeowner and Tolworthy. During that call, Tolworthy acknowledged seeing child pornography on his laptop computer in February, but he explained the laptop had a virus, and Google "redirected" him to a website containing the image. Tolworthy denied downloading anything "inappropriate," but he admitted he did not delete the image as he "should have." Tolworthy also confirmed he was familiar with Torrent software, and it was installed on his laptop. Finally, Tolworthy explained that he installed a new operating system on his laptop the previous night and "everything . . . will be gone."

¶6 Based on Tolworthy's admissions, and knowing that a virus or a Google search do not typically redirect innocent computer users to illicit sexual images of children, Detective Snyder obtained a search warrant for Tolworthy's home. Upon executing the warrant and searching a desktop computer and external hard drives, police found a "very significant amount" of pornographic images depicting children. The search also revealed that Torrent software was installed on the devices and used to search and download the images. The recently-updated laptop contained no pornographic images of children.

¶7 The State charged Tolworthy with ten counts of sexual exploitation of a minor.[1] *See* Arizona Revised Statutes ("A.R.S.") section 13-3553(A)(2) ("A person commits sexual exploitation of a minor by knowingly . . . electronically transmitting[ or] possessing . . . any visual depiction in which a minor is engaged in exploitive exhibition or other sexual conduct."). Before trial, Tolworthy moved to suppress the evidence obtained pursuant to the search warrants. The superior court held an evidentiary hearing on the motion and denied it. At the conclusion of trial, the jury returned guilty verdicts, and the court imposed presumptive 17-year consecutive sentences. Tolworthy timely appealed. We have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A).

---

[1] One count of sexual conduct with a minor was severed from the sexual exploitation counts before trial.

**DISCUSSION**

¶8        Tolworthy challenges the superior court's denial of his motion to suppress, arguing the search warrant for his residence was defective in two respects.  First, he asserts the warrant lacked sufficient particularity because it allowed "virtually every single item in the home capable of storing any kind of computer information [to be searched for] . . . any and all files."

¶9        We review the denial of a motion to suppress for an abuse of discretion; however, we review constitutional issues and purely legal issues de novo.  *State v. Dean*, 241 Ariz. 387, 389, ¶ 4 (App. 2017).  "We consider only 'evidence presented at the suppression hearing and view the facts in the light most favorable to sustaining the trial court's ruling.'"  *Id.* at 388, ¶ 2 (quoting *Brown v. McClennen*, 239 Ariz. 521, 523, ¶ 4 (2016)).

¶10        The Fourth Amendment requires a search warrant to "particularly describ[e] the place to be searched, and the persons or things to be seized."  *State v. Ray*, 185 Ariz. 89, 92 (App. 1995) (quoting U.S. Const. amend. IV).  The "particularity requirement . . . prevents the government from utilizing broad language in a search warrant so as to effectuate general, exploratory searches and seizures."  *Id.*  "When deciding whether a warrant is too general, the trial court must consider the nature of the property sought to be recovered."  *Id.* at 93.

¶11        Here, the search warrant was sufficiently particularized to prevent a "general, exploratory" search.  Although the warrant listed a multitude of electronic devices, Detective Snyder testified at the suppression hearing that sexual exploiters of children will commonly download and possess images on multiple electronic devices.  Specifically, he testified that such offenders commonly download illicit material to one device and transfer it to another "secondary device."  Thus, at the time the search warrant was issued—over two months after the ICAC first obtained the BitTorrent files in this case—"there was no way to know where the offending images had been stored."  *U.S. v. Banks*, 556 F.3d 967, 973 (9th Cir. 2009).  A more specific description of the electronic items was not required.  *Id.*

¶12        As for "any and all" digital files permitted by the warrant to be seized, the warrant was properly limited to evidence pertaining to the sexual exploitation of children.  *See id.* (in a child pornography case involving digital files, warrant that limited search to items depicting "minors engaged in sexually explicit conduct" was "sufficiently particular

to overcome [defendant's] argument that the items to be seized were not specifically identified."). We summarily reject Tolworthy's apparent contention that the search warrant should have been limited to the files the ICAC obtained in February 2015. *See id.* ("Although the government may have known the name of certain files that supported the finding of probable cause, there is no requirement that the warrant be tailored to obtain only that evidence already known to exist.").

¶13　　　　Regarding his second challenge to the search warrant, Tolworthy argues police lacked probable cause to search his desktop computer because police knew the device was not connected to the internet in February 2015 when he lived with his cousin. *See* U.S. Const. amend. IV (requiring probable cause to issue search warrant). Thus, according to Tolworthy, "there was no fair probability that evidence of a crime would be found on that computer device."

¶14　　　　In determining whether probable cause exists to issue a search warrant, a magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (affirming totality-of-the-circumstances analysis of determining whether probable cause exists under the Fourth Amendment). It is the superior court's duty, when asked to review a search warrant's propriety, "to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238-39 (alterations in original) (citation omitted). In doing so, the court must presume the search warrant was valid and hold the defendant to his burden to prove its invalidity. *See State v. Crowley*, 202 Ariz. 80, 83, ¶ 7 (App. 2002); *see also State v. Ault*, 150 Ariz. 459, 467 (1986) ("Doubtful or marginal affidavits should be considered in light of the preference of validity accorded search warrants.") (citation omitted).

¶15　　　　Tolworthy fails to establish a lack of probable cause to search his desktop computer. Given that the desktop computer was not present when police searched Tolworthy's cousin's residence, one could reasonably conclude that Tolworthy had at some point returned to his cousin's home to pick it up. And, as noted, Detective Snyder testified at the suppression hearing that sexual exploitive material is commonly downloaded on one device and transferred to another. Accordingly, even assuming the desktop was "boxed up" during Tolworthy's entire stay at his cousin's house, the superior court could properly conclude that a substantial basis nonetheless existed to find that Tolworthy probably transferred child pornography to his desktop computer at some point after moving to his new home. Further,

during the confrontation call, police learned Tolworthy had recently "wiped his laptop" by installing a new operating system on it. That fact supports an inference that Tolworthy likely transferred illicit material from the laptop to his desktop before the laptop's upgrade to surreptitiously maintain the illegal files.

**¶16**      For these reasons, the superior court's denial of Tolworthy's motion to suppress was not an abuse of discretion.

## CONCLUSION

**¶17**      We affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA